Good afternoon. Kathleen Moran on behalf of Margarito Ramirez for the Federal Defenders of Eastern Washington and Idaho. The promise of counsel in this case, the promise that's guaranteed by the Sixth Amendment and by Gideon v. Wainwright is empty when that counsel is inadequate. Mr. Ramirez, who has been a victim of the Grant County Public Defender System, did not receive effective assistance at counsel. The lack of the competent counsel cast doubt on his entire conviction, and he should be entitled to habeas relief. Now, of course, the question of the day is, how is he entitled to habeas relief if there is a time limit problem? And I think that we have submitted that there are, in fact, three defenses to this time limit problem. The first is, in fact, would be under 2244d, which actually would suggest that he would not be time limit barred. The other two defenses we've raised are actual innocence and equitable tolling. The second two would, of course, assume that he is time limit barred, but that he could raise an equitable defense. The first suggesting that, in fact, he wouldn't be time limit barred. But may I ask you a question about the actual innocence defense? You know, I had a little difficulty understanding the claim of actual innocence. It seemed to me that there was nothing to show that he wasn't a participant in this activity. The issue was over whether he was actually the one who struck the blow, it seemed to me. I couldn't see anywhere where you were saying that you were showing that he was not part of the group that took this fellow off and, you know, committed the underlying felony. Your Honor, I don't think that there's a suggestion that Mr. Ramirez was not present with the group. Because the trial court found him, acquitted him of the first degree murder charges, the court found that they couldn't determine who struck the fatal blow. So the question becomes what took place specifically in that cemetery and prior to that cemetery where Mr. Brace was kidnapped, and who exactly was involved in that? The problem that was never developed was the two people that were in the car, the two women, were never charged in this crime. Those people both made statements to suggest that either Mr. Ramirez might not have been involved or his mother was involved. I didn't see how they were particularly helpful. Your Honor, the two women's statements that were present in the car up until they got to the lake, those two women, one of them says that she didn't ever see who put Mr. Brace in the car or who put him in the car. And the other one says that she didn't see who put Mr. Brace in the car or who was involved in duct taping him. That by itself is … How does that show actual innocence? Well, you don't have to show under an actual innocence claim. We don't have to show that he's actually innocent. We have to show that there's evidence that casts doubt on the verdict in the case. How does that cast doubt? I think it casts doubt because you can't be certain beyond a reasonable doubt that Mr. Ramirez was involved in the kidnapping if – and it goes back to the motive of the kidnapping. If the motive of the kidnapping is something different other than what the State presented, which was that there was this money that these girls had lost as a result of this victim or that he had stolen their money, if that motive doesn't exist, then I think it casts question on what took place in the cemetery. Both those girls said they didn't see what exactly took place or who was involved in the duct taping or who put Mr. Brace in the car. But how does that exonerate him, even assuming they just said they didn't see who did it? Well, assuming he's there but not involved in the kidnapping would suggest that he's not involved in the kidnapping. But the fact that they didn't see anything doesn't – I mean, I can testify I didn't see anything. It's certainly significant, Your Honor. I don't see how it wouldn't. And there was other evidence. So the fact that you've got these other witnesses that say, we can't say that, I just don't see the exoneration in that. Your Honor, the other key point there is the fact that there was no – that the fingerprint evidence, which was never introduced to the trial court, so the finder of fact didn't hear that, was – and, of course, the victim being placed in the trunk was the kidnapping. But the judge said there was no physical evidence. Right. And that, in fact – And so got him off on one, but still said, but there's no physical evidence. The judge knew that. But I think that, unfortunately, that's not really quite true. There was physical evidence. There was physical evidence that Joe Jordan had – had – there was his fingerprints on the trunk of the car. Mr. Ramirez's fingerprints were not on the trunk of the car. So, in fact, had that been brought to the trial court's attention, I think that that is at least suggestive, or at least you can argue circumstantially, that Mr. Ramirez's and that Mr. Jordan, the co-defendants, were there. Because the two women who were not even ever interviewed in this case by counsel, those two women weren't charged. They're certainly – that's questionable why they wouldn't have been charged, and I guess that goes outside of the scope of what this issue is. But what's important about the fact that they weren't charged, they were interviewed by the police. One of them was and one of them was not. They had several inconsistent statements that – as a whole, it casts credibility issues, I think, on the State's case. Because the State's case, in a nutshell, was these women that the victim had ripped off these two girls and stolen money from them, that as – as to get him back, they were going to duct tape him and take his car or something. That's what the evidence suggests. However, those two girls, when they talk to police later, they discount that theory. There are statements to another witness that go back and forth, we don't remember what happened. And then another statement that they had taken LSD at the time and so they don't recollect what happened, that they weren't there, that they were there, but that Mr. Ramirez left with them. They said several different things. All of those things cast doubt on what the State's theory of the case is, which is that they had to prove beyond a reasonable doubt that Mr. Ramirez was present and a participator in the kidnapping. In essence, they can't show that. And that's where the ineffective assistance problem comes into play, because Mr. Earle, in this case, didn't interview those people, despite the fact that the two of them were present for the entire situation, from the party to the events in the cemetery and the kidnapping, and then on to the lake and then back. Those two women arguably were either accomplices or involved. However, they were never charged, and they were never interviewed by Mr. Earle. Mr. Ramirez was not even aware that there was a transcript of those two women's testimony, and then the third woman who was picked up later in Moses Lake, until 2002, when he happened to see a co-defendant on the chain going to Sheridan. That was the first time he was aware that there were actually transcripts from these witnesses. What the district court relied upon was statements in the personal restraint petition that discussed summaries of the witness statements. Mr. Ramirez certainly was aware that the police had talked to these people, but the point is he wasn't aware of what the people had to say or, in fact, that there had been tape-recorded statements that, in fact, had been prepared as witness summaries. But isn't the first of those enough to alert you to the witnesses? I mean, you don't have to know that there's been an official transcript in order to put you on notice that you might have a witness who obviously you know what their broad relationship to the case is. Your Honor, I think you would have to know at least some sort of tertiary clue what the witness may have had to say. The problem with a defense lawyer that only meets with his client twice before a murder trial is that that person isn't going to know what each witness is going to – what each witness has said and will say if they're – if they're subpoenaed. Mr. Ramirez, because he only met with Mr. Earle two times, was only aware of, other than police witnesses, Terrence Cole testifying against him. And that was the only witness statement he had ever received. So while Mr. Ramirez may have had some abstract recollection or, you know, known in some way that the police probably talked to the other people in the car because that's a common sense sort of thing, it doesn't mean that Mr. Ramirez knew exactly what these people had said to the police and what the inconsistent statements were that go directly to the heart of the issue, which was the kidnapping. The events in the cemetery become paramount because that's where the whole kidnapping charge comes from. If the events surrounding that kidnapping are – can or could have been cast into doubt, which I think with good defense work they could have been, what you're left with is – Let's talk about that, though, just so we're kind of precise. We have a lot of standards moving around. Absolutely. So on the actual innocence, you have to be more likely than not that no reasonable person would have found guilty. Isn't that the standard there? Your Honor, because this is an actual innocence, it – gateway claim is what we're claiming. Right. We have a constitutional problem, which I think we can show, plus evidence that undermines or impeaches the credibility of the witnesses. And I'm quoting from Schlupp v. Delwell on that. I think that that's the standard here, not that we're absolutely convinced that he would be innocent, but that there are things that cast doubt on the verdict, including things that impeach either the credibility of witnesses or that undermine the witnesses or new evidence. Now, whether or not Mr. Earle knew of the fingerprint evidence, I have no idea. I can't imagine what possible strategic decision would suggest not bringing that evidence forward when, again, the key events come down to the felony murder charge. What's interesting about that specifically – I mean, I'm reading from Schlupp, and it says, Recording of the Petitioner to show it's more likely than not that no reasonable juror would have convicted him in light of the new evidence. I mean, so that's, to me, a more precise – that's the articulation of the standard that flows from the constitutional. Right. So there, if you have this new evidence, which basically is, I didn't see anything. I mean, that's probably putting it in its most charitable light is, they didn't see anything that would implicate him. And that takes you back to, in light of that, you still have the overall evidence, correct? I think so. What's interesting, though, is they say, you know, we didn't see anything that would implicate him. But, oh, wait, we were on LSD at the time. Oh, but the duct tape happened to be in my backpack, but I don't know how it got there. I mean, those are all layers of what was happening with those witnesses who clearly probably had some interest in protecting themselves. The connection I can't figure is how their evasion to try to keep from incriminating themselves, because they were probably in it, too. This isn't an either-or situation. I don't know how that does anything to further the proposition that Mr. Ramirez can make out the standard that Judge McKeown just articulated. It doesn't make him any more innocent that they're probably guilty. Well, I think it does cast doubt on what took place at that point in time. When Mr. Brace is placed in the car, that's what we're talking about, because there isn't any evidence later to suggest that Mr. Ramirez was involved in the murder. In fact, the judge acquitted him on that charge. When you say he wasn't involved in the murder, you've got to separate those two. You can't link him, or there's not sufficient evidence to link him, beyond reasonable doubt, with the fatal blow. Correct. And the judge clearly cut that out. But on a felony murder, you don't have to be connected with the fatal blow. And so the real question is, can you connect him with the accompanying felony? Well, the only evidence that we have to connect him to the accompanying felony is one of the co-defendants, Terrence Colt, who received. And that evidence doesn't change whether or not these girls talk or not. So what you have is all the evidence that was ever developed, some of which does cast doubt on what took place. I'm still waiting to find out what it is that cast doubt on what took place. I haven't heard. Just so you know where I'm coming from, I haven't heard it so far. I've heard things that say that there are other people involved, too. I've heard people say, I didn't see something in a way that sounds kind of suspicious. But none of that takes him out of the circle. Well, I mean, what you have, the bottom line is, there's no one that places him there involved in the actual binding and placing of Mr. Brace in the trunk. Well, he was convicted on that. Right. But there's no evidence beyond the co-defendant's testimony. Which doesn't change. Right. Which doesn't change. It's bringing this other evidence, and I'm saying it doesn't change anything. Well, I think it does change something. I guess what I think it changes is when you look at the fingerprint evidence, the other two people that were present who clearly made self-serving and impeachable statements, that cast doubt on what did take place there, in my opinion. You know, I think it does. And the reason I say that is because I think that what you're left with is not knowing for sure whether or not Mr. Ramirez was involved in the kidnapping. If we don't know for sure whether he was involved in the kidnapping or not, then that's not proof beyond a reasonable doubt that he was. And you have to wonder, how could counsel have sorted through all of those issues on the day of trial when this case was amended? Because that's when the charges were. I'm not trying to argue about the IAC part, but we're still trying to be able to get to those issues because the untimeliness problem. Right. And the actual innocent skateway isn't real wide. No, it's not real wide. I think that, unfortunately, the only evidence that we have to point directly at Mr. Ramirez in the kidnapping is the co-defendant. So if we look at all the evidence that was – and this is hard to do in a vacuum because what we're trying to do is say all this evidence that was never offered, that was never investigated, that was never looked at, would suggest that other events may have happened at the cemetery when Mr. Brace was put in the trunk. And I think that that's – I mean, of course these other people didn't come forward and say, no, Mr. Ramirez wasn't involved. I did it. Because they have no reason to do that. I mean, they clearly had already walked away. All right. Well, you've got about a little less than five minutes. Do you want to try your other two theories? Your Honor, I'd rather reserve time for Robona. Thank you. May it please the Court. My name is Donna Mullen. I'm an assistant attorney general representing the Respondent in this habeas corpus petition. The district court correctly found that Mr. Ramirez's habeas corpus petition was time barred under 28 U.S.C. 2244D. The district court appointed counsel and permitted the petitioner to obtain extensive discovery, but determined that the defenses against the statutory time bar were without merit. And this Court should affirm the position of the district court. Mr. Ramirez presents three defenses against the statute of limitations. First, that he did not discover the factual predicate of the claim until February of 2002. Second, that he has a colorable claim of actual innocence. And third, that he's entitled to equitable tolling. I'd like to first address the actual innocence, colorable claim of actual innocence. And I would say that as this Court has pointed out, that the evidence that Mr. Ramirez is bringing forth to show that he was factually innocent does not do so. In fact, contrary to what petitioner's counsel argued, America Perry in her 1988 said that the three gentlemen who were in the car were escorting Eric Brace to the car, and it was evident that there was something wrong. He was stumbling because he had been duct taped. Mr. Ramirez told an officer, I was there. I'm being blamed because I was there, but I wasn't the person that did it. So the statements of Alyssa Hubbard and America Perry are not reliable information that tend to demonstrate that Mr. Ramirez is actually innocent. And as the district court held, there was insufficient evidence to demonstrate that. The petitioner also says that the testimony of Mr. Cole was not adequately impeached. However, the prosecutor completely exposed the fact that Mr. Cole had initially lied to the police, that he then was given the opportunity to reconsider his statements. He was given a an opportunity to have his testimony reconsidered. He was given the opportunity to have a free talk with the police, and that he was given a guilty plea agreement that was very, very favorable. All of this was brought out during the trial. Mr. Ramirez's claim that he was actually innocent is without merit. With regards to the factual basis of the claim, Mr. Ramirez argues that he was unaware of the factual basis of the claim until he met Mr. Cole, who was on a transport bus back to Grand County that occurred on February 27th and 28th. He alleges that he was unaware that there were actual statements that were made to the police. But Mr. Ramirez brought up in a PRP that he filed in October 11th of 2001 that counsel was ineffective for failing to make a summary of police notes and call as a witness America Perry or Elisa Hubbard. That's the factual basis of his claim, that the attorney failed to investigate and call these two witnesses. He then added Melissa Payson as one of the individuals that was not called by the attorney. And he did that in his motion for discretionary review to the Washington Supreme Court. The fact that he found out that there were actual transcripts of statements in February of 2002 is just additional information. It's not the factual basis of the claim. The district court found that Mr. Ramirez's argument that he was unaware of the factual basis of his claim until February 27th of 2002 was implausible, and found that his affidavit, which was submitted two years after he filed Savious Corpus petition, saying that he did not know that the other individuals had spoken to the police, was incredible, as it was not supported by the record. Finally, to briefly talk about the equitable tolling argument, in general, Mr. Ramirez did not have any evidence that he was in the I.M.U. for long periods of time, and therefore had a very limited access, and that there were several times when his legal papers were taken from him. What is, I think, important for this Court to know, and I think if you look at ER 153 and 155, the dates to which these claims are totally without merit, is when he said that he lost his legal paperwork due to a cell search. Those particular dates occurred after the Habeas Corpus petition was filed, and those dates were not included in the determination of the statutory period when the statute ran. So those two particular claims are totally without merit, because they occurred after the Habeas Corpus petition was filed. The only other claim is a period of time from June 5th to June 22nd, when Mr. Ramirez was transferred from Clallam Bay to Stafford Creek, and then returned back to Stafford Creek, and apparently there was a period of time where his property had not been delivered to  So I would assume that the period ran not from June 5th to June 22nd, but from May 2nd to June 22nd, a period of about 40 days. His Habeas Corpus petition was over six months late in being filed. The Respondent respectfully requests this Court dismiss Mr. Ramirez's appeal and affirm the decision of the District Court. Unless the Court has any further questions. Your Honor, briefly, I wanted to note a couple of things. First of all, under 2244, that exception is a newly discovered evidence exception. I think where the District Court may have gotten, I don't want to say confused, but may have misunderstood what had taken place, the fact that there was, in Mr. Ramirez's PRP petition that he filed in 2001, he talks about some of the evidence that was found in the summaries of witness statements, or police notes of witness statements. That language, I think, came out of the Court of Appeals opinion out of Division III, that there was some discussion about witness statements or summaries of witness notes. That's a far cry from knowing, in fact, that there are transcripts that exist of witness statements, and that those transcripts say certain things that would be helpful to your case. As I said before, I think it would be natural to assume if you were in a car with five people and someone ends up dead, and there are murder charges developed, that the police would have talked to all of the people in the car. So I think Mr. Ramirez had some sense that the other witnesses had been interviewed. What he didn't know is what those interviews had turned up, especially the interviews of some of the other witnesses who, and I'm thinking specifically of John Shane and Lucas Haynes, those people had information that was impeaching about the two women. Getting back to the Court's issue about actual innocence and how the witness statements helped Mr. Ramirez or helped to show an actual innocence claim, I think what those witnesses show, or with more investigation could show, is that they themselves were involved in the case, and their statements certainly suggest that there was much more to the puzzle than what was presented. But why infer rather than? Couldn't they all be involved? Well, I think so, but, I mean, I think that without investigating that, that's what you're left with. You don't know. Well, but you don't know isn't enough to establish actual innocence or to get through the gateway. Well, Your Honor, I think the bottom line being the fact that there was no testimony that Mr. Ramirez even knew Mr. Brace or would have otherwise been involved, the fact that he was merely present isn't sufficient. My suggestion is with the other witnesses, if that had been developed and investigated, there may, there, I think it certainly casts doubt on the State's theory of the case and casts doubt that Mr. Ramirez was involved in the kidnapping itself. That combined with the fingerprint evidence that suggests that Mr. Ramirez never touched the trunk, that the only person that did touch the trunk was Joseph Jordan. If Mr. Ramirez was involved in putting Mr. Brace in the trunk, certainly his fingerprints would have been on the trunk, and they weren't, even though another co-defendants were. The trial court didn't have, didn't ever get to consider that evidence. Mr. Ramirez was not aware that evidence existed until the Federal defenders were appointed on the case. So that by itself is significant evidence that Mr. Ramirez wasn't involved in the kidnapping portion of these events. And since that's what the felony murder rests on, that's why that's significant, even if we take out the other witnesses' statements. But with the other witnesses' statements, I think what we're left with is there's certain, I think there is some doubt cast on what exactly took place. Of course, that was never even investigated, so we're left in a vacuum trying to second-guess what would these people would say. I mean, because I don't know what they would say now. And that's where Mr. Earle cost Mr. Ramirez the chance to investigate this case. I ask the Court to consider remanding on the issue to allow us to develop this further, because I think if we get past the time limit bar, Mr. Ramirez does certainly have significant issues of merit on the case that cast serious doubt on his conviction. Thank you. Thank you, counsel. Thank you. The case to start will be submitted.
judges: Reinhardt, McKeown, Clifton